2018-1922 ATEN International Co., Ltd. v. Uniclass Technology Co., Ltd. Thank you, Your Honors. May it please the Court, my name is Joseph Pia, and with respect to this cause, I represent the appellants. This is an appeal from a denial of Section 285. Here's your problem as far as I'm concerned. I think you have a pretty good argument about the weakness of the lost profits testimony. It was empty as far as I'm concerned. But given the argument in the last argument, and that it's pretty clear that absent an error on the part of your opposing counsel, the whole thing might have been reversed. How can you argue for attorney's fees? Do you see what I'm saying? Yes, under the Supreme Court's decision in Octane, there are two prongs that have both been satisfied in this case. The first is the unreasonably weak litigating position, which is lost profits and reasonable rule. We've heard some about, and we understand... That part might be unreasonably weak, I think. I'd agree with you. But your problem is, they could have won this case. These only shift to the winner. I take it the point is, at least based on the argument we just finished, there's a chance that they will actually win the validity point. There was a chance, respectable chance, that they might have won the infringement issue at trial had it been presented somewhat differently. And if the only aspect of their case that might be viewed as extremely weak is some portion of their damages presentation, they might have walked away with an injunction or very small damages. But you think it's an abuse of discretion for the district court in that circumstance to say this is not an exceptional case? Abuse of discretion is a difficult standard to overcome, but it's not without limits. In this case, the court stated that this was a standout situation. He had never seen anything like this case. He even went so far as to say he would be fired for the disproportionate litigation style at trial of A-10. And in his opinion on this issue, on J-Mal, he remained very silent about that issue. He didn't recognize the argument that we had made. And that silence... You mean he didn't formally recognize it? In his opinion. His opinion did not recognize that language. And likewise, his opinion did not discuss the lost profits. Do you think that... I guess I'm sitting here thinking, do I occasionally say something at oral argument that perhaps I don't put in an opinion because I'm exploring something, or maybe I have a second thought about it and it's not really the basis of my decision? That feels like a rather important freedom that judges may have to be more careful in their writing than in their speaking. Is this a situation of that? Even assuming everything else you're saying is right. Yes, of course. Of course the court would have great latitude in what it says during trial and especially not during the actual trial where the jury is listening. But A-10 took it a step further. When the court asked A-10's counsel why it was bringing such... All you can say about the summary of the court's language is that it was an extraordinary situation. What is it you think is so extraordinary? The fact that they had a small potential recovery and they were spending a lot of money in attorney's fees to litigate. And so the cost of litigation exceeded by maybe even a lot what they hoped to recover in actual monetary damages. Is that what you think makes this case so extraordinary? Yes, once the case became what we've identified as really an anti-competitive or revenge case, this court has found that 285 may be assessed for a deterrent purpose. And in this case where the boundaries are so extreme, we're talking about a few hundred dollars for some of the defendants. We're talking about millions of dollars in fees. But doesn't a patentee have a right? You are the fiercest competitor of the patent holder. That's what the record reflected, that you all clash and fight for the market. I've certainly seen Apple, Samsung go to war over smartphones and sustain litigation longer than I could have ever imagined anyone would have the patience for or be willing to pay for. But because they're such fierce competitors in the market, they have to establish their turf. You don't think that that's a basis for a patentee? You didn't ever offer as any form of settlement that you would stop using the technology, did you? Did you offer to give them an injunction, for example? A tenant licensed all its competitors in the industry. But not you. You are their fiercest competitor. You two have the largest market share. You're their fiercest competitor. I assure you, Apple doesn't license Samsung and vice versa, except as an incident to litigation ultimately. That's my understanding. But fiercest competitors don't necessarily want to license each other because you take each other's market share. A tenant actually had licensed UniClass twice. On other technologies? On overlapping patents. Okay. So are you suggesting that a patentee doesn't have the right to seek an injunction against its fiercest competitor? What if there were no damages at stake? They don't have a right to seek an injunction to prevent their fiercest competitor from adopting their technology? They do as long as it's not— So no damages are at stake. Everyone comes into this knowing there's no money at stake. You haven't even launched a product that you may be advertising you're about to launch that would be infringing. They don't have a right to spend, say, $5 million in attorney's fees to prevent you from launching that product so that you don't steal a part of their market share? If it's reasonable and not exceptional. No, no, that's not what the statute says. The statute says patentees have a right to exclude. They don't say they have a right to exclude only if it's going to cost a lot of money. They have a right to exclude. Unless a patentee has shown a willingness to license its competitors in the industry. Are you saying a patentee doesn't have a right to an injunction if it has shown a willingness to license competitors? It's a mitigating factor in the analysis. So the right to exclude isn't a right to exclude? What that prong goes to is irreparable harm. What prong? An injunction includes as one of its factors irreparable harm and the patent owner's willingness to license its competitors tends to show a lack of irreparable harm and tends to weigh against the granting of an injunction. But in this case, you're arguing not they shouldn't get an injunction. But you're saying it was an abuse of discretion for a judge to think you shouldn't get attorney's fees simply because they pursued a smaller amount of damages and an injunction and spent a lot of money in attorney's fees to seek that, which you think was not worth it. And you're saying that was an abuse of discretion. That sort of cost-benefit analysis is not something I'm going to do for the first time on appeal for sure. I would just note a couple of facts that we would ask the court to consider. One of those is that A10 is approximately 100 times the size of Uniclass, as we note in our brief. This is not fierce competitors such as Apple and Samsung. This is one company trying to force another company out of business that is much smaller proportionately and has used litigation as a weapon in order to do that. That's clear on the record. That's why the court finally exclaimed, what is going on here? And that's when A10 finally admitted it's anti-competitive behavior. But you could have offered to stop using the tech. That would have taken the injunction off the table. But you didn't ever, as any part of the settlement agreement, it's my understanding, make that offer, that you would stop using the patented technology in addition to paying them the damages that they were rightfully owed. Part of the settlement discussion actually did include reasonable designer rounds, and A10 had given a recipe for designer rounds to one of the other OEM manufacturers, StarTech. It had included within that license agreement the exact methodology by which the accused infringer could continue to sell products in a similar vein without infringing on the technology as a part of that settlement. And that certainly would have been the case here as well. But you didn't offer them a settlement agreement in which you would stop using the patented technology, did you? In which there would be designer rounds, yes, we did. And here's my last question. Do you honestly think that— Can I ask a question? Of course. I'm sorry. I wasn't sure I heard you. Did you say, yes, we did offer? Yes, Uniclass did offer to cease using the claim technology and instead replace that with designer rounds. What couldn't be come to an agreement is whether or not those designer rounds still infringed. And that is one of the issues that broke down settlement. Of course, that's not part of this record, but that is the case. But I guess what I'm thinking of is sort of bigger picture policy type stuff. What you're asking us for is to find that it was an abuse of discretion by a district court to refuse to award attorney's fees in a scenario where there was a smaller damage award plus an injunction at stake and the attorney's fees were really costing everyone a lot of money. And you're saying not just that they should have, in that case, awarded you fees, but that it was an abuse of discretion for him not to. And so I'm just imagining a million sets of factual scenarios where it wouldn't even just not be an abuse of discretion, where I would think it would be flat out proper not to do it. I don't know all the facts. All I know is what you presented in the briefs and what was at stake. But an abuse of discretion is a very high standard. What about the need for deterrence? I mean, if you're a patent holder and if people are freely infringing your patents, I mean, I do know that it is not uncommon for a patent holder to seek to obtain a judgment against one of them, to send a deterrent message to the rest of the competitive industry that either take a license or I'm going to fight you till the bitter end to make sure that you abide by my protective rights. I mean, couldn't that be a rationale not just, quote, revenge, but a rationale to force compliance? Because you're not the only player in this market, as you indicated. There are other players in the market and they want to make sure their technology is respected by everybody and they want to send a message to the entire competitive universe that if you don't rightfully take a license from us, then we're going to fight till the bitter end to make sure to protect our technology. I mean, isn't that a legitimate rationale to spend, say, $5 million, even though maybe only $600,000 in damages were at stake? Because they've got to send a message to the entire industry and to you with regard to other patents. So next time they come knocking, you're going to take a license more readily. You're not going to fight because you know they'll not let you off the hook. I mean, isn't all of that a basis for rightfully pursuing litigation as a patent holder? Let me start with the beginning of your comment, which is, and your question, is that this is a totality of the factual circumstances analysis. This is in the weeds. What happened was something extraordinary taking place in this case. And so, yes, in certain circumstances it would be appropriate for a competitor that owns a patent to begin a series of cases against others, and it may be worth it in certain circumstances to outspend a competitor. But in this case, it was exceptional and it was extraordinary, as the court pointed out, after this court had lived with the case for two years and actually seen A10 in other cases against Belkin and seen the litigation behavior and construed these claims a time before this case one time and watched A10 in this case attempt to reconstruct all the claims that this court had already construed, this district court had already construed. It saw all of this behavior. And in the final breath, even though, yes, the court has some latitude to say what it will during trial, it said, this is extraordinary. I've never seen anything like this. Once those special words under octane are said, in this type of a contents text, this case does stand out from others under the factual circumstances. And in this case, where the district court, who we very much like and we very much agree with in many points, but does not discuss the extraordinarily weak damages position on all aspects and does not discuss its language at trial, which it elected not to, we would ask the court to view those two factors as sufficient to reverse the district court's hold. Are there any more questions? Yep. Let's save the rest of your time for rebuttal and hear from the counsel. Mr. Nadich, please proceed. Good morning, Your Honors. May it please the court. I'm Ed Nadich representing the Appalachian. How do you say your name? Ed Nadich. Nadich. Got it. Thank you. The trial judge in this case, Judge Guilford, as you just heard, he's lived with this case for almost three years, sat through eight days of jury trial and all the pretrial proceedings and was able to view the parties close up. And Uniclass's counsel just made a note of that. He had the best opportunity to view the counsel's behavior and his ultimate conclusion when he weighed all the circumstances. In his words, he said 810's behavior was rather unexceptional. Why do you have a technical expert if he, quote, didn't need to look at source code to make his opinions? Well, that's actually, I would say it's fairly common that when you file a complaint, you don't have source code because it's all confidential, obviously. So you make your, and you have to have a reasonable good basis for them. So you normally, when you have like a microprocessor case, you base it on the manuals. You don't really need the source code or you base it on the standards. You base it on what evidence you have. But then, in just about every microprocessor case, you have to review the source code. Otherwise, the other party will say that's not, even the manual's not correct. That's not how my product really works. So it's common for an expert might say, I don't know. But he didn't, he never did review it. Am I correct, or did he review it eventually? He did review it. One of the complaints, I think, was that there was multiple rounds of source code review. Okay, okay. Because I read that particular page. Yeah. What do you make of the comment during the trial by Judge Guilford about, you know what the comment is. The resources you're putting into this. I don't know exactly what the word was that he used, but it was something like extraordinary. I think Uniclass is actually sort of really spinning those comments in its brief in a not quite accurate way. I went back and read what he said. Let me, I'll give you an example. One snippet they cite a lot is on appendix page 955. But if you read some of the context there, let me switch to that page. They cite on appendix page 955, it's in the lower right corner on page 12, starting at line 15. But if you start reading a little bit earlier and see some of the context of what, it's starting on page 11. The same appendix page, but just higher up on that page, on the transcript page 11, line 13. He's asking, the court is asking Uniclass's counsel. He's asking him about how many questions you need to ask the jury on invalidity in your special verdict form. So at line 13 he says, he's talking to Uniclass's counsel, Mr. Pia. Let me ask, how many questions do you think we'll be asking this jury? How many questions total, Mr. Pia responds. There right now with all the various little check boxes, there are probably hundreds. The court says hundreds of questions, and Mr. Pia currently as it exists, yes. And the court says on a $650,000 royalty case, do you think that's appropriate? Do you think that's a fair use of the citizen's time? Then I'm going to kind of drop down later to the portion that, to Uniclass sites. And then he, on line 1512, he starts talking about, I do think, and I keep asking people, I'll ask you about it. We're asking a lot of these citizens, we're asking a lot of this courtroom. And he goes on and he asks, why hasn't this case been settled? The plaintiff has spent over $400,000. I'll just stop there for now. But my point here is, if you look through the transcript, what the judge is doing, he wants the parties to streamline the case so that you don't waste too much of the jury's time. Don't ask hundreds of questions. His comments are really directed at both parties. And I think if you look at, and there's another example, like if you look at, there's on page 1053, there's another thing that they cite, Uniclass cites in his brief. Oh, wait. Stay where you were. Okay. Because on the next page, I highlighted this language. But I just don't understand $400,000 in a $650,000 case. When I was a lawyer, if I did that, I'd be fired, right? Yeah. And so on. I mean, he's talking to you. Yes. Well, I would submit his comments are, and that comment, I would agree, is directed to me. But I think his comments more broadly are directed to both parties. But I would say, number one, we list a lot of reasons in our brief. There's really much more at stake than just $650,000. There's a permanent injunction. That's just past damages. Even if we don't get a permanent injunction, there's future sales. Listen. Okay. What bothers me is your damages expert and abysmal job, at least reflected in his testimony. But I was a trial judge for 16 years. And your judge had an opportunity to view the circumstances and gets a lot of leeway when it comes up here. That's where I'm coming from. Well, my one comment on damages is that these parties were direct competitors. Normally, you can get lost profits if you can prove your market share. The judge didn't think we did a good job of that. But I would argue it's not frivolous. And reasonable royalty, the parties had a license to this patent. So that's a pretty good indication of what a reasonable royalty rate would be. So I would push back a little bit. What ended up being the royalty figure that your expert asked the jury to adopt? I believe it was 7.5%, which was based on the prior license agreement. And do we have a total dollar figure that that 7.5% represents? It was roughly $650,000 past damages. Okay, that's where the $650,000 comes from. Yeah. And then what about the remarks at 11.53? Well, this, I would agree, is directed towards 8.10. And the thrust of the judge's argument is, how long is this cross-exam? You're doing a good job on your cross-exam of the expert, but how long is it going to go on? We don't want to use up the jury's resources. He said, I've just never seen anything like this. So as soon as you say your cross isn't a good cross and all, I don't know why we're spending so much time on this for a case of six. It's, again, his concern. Why are we spending so much time with a case that's only limited damages at stake? But there's another, just to show that his comments are directed towards both sides. If you look at 10.53, I'm sorry, 10.52, this is another portion that Uniclass cites in its brief. And they're citing to page 73, starting at line 16. And you'll see there's a reference in line 17 to 229 slides. If you read the context here, what the court is actually doing, he's saying to Uniclass's counsel, why do you need 229 slides with your technical expert for a case with only $650,000? And I'm not trying to criticize Uniclass's behavior. I'm just saying, my point is that the court was saying to both sides, let's streamline this case. But here's my problem with your damages expert. What's the authority for his product mapping theory? Well, my understanding of what he was saying is that if you look at the products that... It's a new theory, isn't it? No, I don't think so. I don't have a case to cite you. But I think what he was essentially saying is that for the products, there's certain products that Uniclass should be entitled to lost profits for because those products matched up with Uniclass's products and there was no competitors in that narrow market for just those products. And then for other products, you wouldn't be able to get a lost profits for those. And that was... He didn't quite say that. He didn't say it very well. I mean, he could have been more clear. But my point would be normally competitors can get lost profits if they can show their market share. They didn't do as good a job as they could have. But one more comment about these district court's comments. To the extent there's any question about what was in Judge Guilford's mind, I think the best person... I mean, obviously Judge Guilford knew what was in his mind the best. And so you can look at his attorney's opinion. And he found his behavior to be unexceptional. And unless there's any other questions, I'll sit down. Okay, thank you. Mr. Pierre, you have some rebuttal time. Thank you. Thank you. A10 brought a case with 72 patent claims. It accused over 125 products. It conducted extensive source code review that extended the deadline multiple times. At one point, it had to change its expert. And that was one of the reasons behind that. And then during trial, the expert testified, I didn't need to look at source code at all to make my infringement position. But all of that is expenses that they bore. That's right. So how did that cost you any money when their expert looked at hundreds and thousands of pages of source code? When we go back to this quote that was just read by A10, it's actually the judge's comments to me when I was in the courtroom. He's asking why we have so many jury instructions on invalidity. It's because we have so many claims at issue. And I said, I would love to narrow, it's what I was about to say, this case down because this is massive. So because there's so many claims brought, we had to try to invalidate. Uniclass had to try to invalidate. Did you request that the court pursue representative claim strategy? We worked tirelessly on that. And right before trial, we were able to cold the claims down to about 34 claims. No, I'm sorry, just to make sure my question was clear. Did you ask the court to adopt representative claims? Yes, we did. Oh, you did? And he declined? No, he did. But we had disputes over what those representative products and claims would be. Actually, not claims products. I'm not sure that we asked the court to find representative claims. So that is your question. I'm not sure about that. Thank you, Your Honors. Thank both counsel. Please take another submission. Thank you.